WENTWORTH, Judge.
Appellant seeks review of a Department of Health and Rehabilitative Services (DHRS) order by which its audit payback liability for fiscal year 1982-83 was determined. Appellant raises several issues on appeal: 1) whether the hearing officer erred in finding that DHRS properly applied Chapter 10E-14, Florida Administrative Code, on and after its effective date to the last three quarters of the contract period; 2) whether the hearing officer erred in finding that DHRS properly characterized Medicaid funds as grant dollars rather than as fees for services, thereby requiring appellant to provide a local match for its Medicaid reimbursements; and 3) whether the hearing officer erred in finding that union contract leave benefits were “generous,” and that DHRS properly disallowed excess leave expenses. We find that although the contract between the parties did not expressly incorporate future amendments to the law, application of new administrative rules to the preexisting contract was not improper under the circumstances of this case, which showed that appellant had knowledge of impending rule changes following the amendment of chapter 394 five months prior to the execution of the contract, and relied upon and took advantage of the rule changes in submitting budget requests to DHRS throughout fiscal year 1982-83. We find that DHRS acted within its discretion in characterizing Medicaid funds as grant dollars, and that DHRS properly disallowed leave expenses in excess of those allowed for comparable positions under the State Career Service Plan. We therefore affirm.
Appellant, a non-profit corporation providing mental health and alcoholism treat *718 ment services, on September 30, 1982, entered into a one-year contract with Mental Health Board No. 9, Inc., a DHRS district level board. Under the contract, appellant was to provide mental health services and the board was to reimburse appellant for 75 percent of the costs incurred in providing those services. DHRS was the draftsman of the contract and successor in interest to the board, which was abolished by the legislature in 1984. At the time the contract was executed, Chapter 10E-4, Florida Administrative Code, was in effect. That chapter provided for a district wide match concept, authorizing service providers to utilize available matching funds from other providers within a district to offset any audit payback liability determined by DHRS.
The 1982 legislature amended Chapter 394, effective October 1, 1982, to require DHRS to prepare a line-item budget. DHRS interpreted the amended law to no longer permit reimbursements to service providers under Chapter 10E-4, which did not provide for a line-item budget. The agency promulgated an emergency rule, effective October 1, 1982, and then adopted Chapter 10E-14, effective February 23, 1983, requiring service providers to itemize their budgets and to comply with the new rules. Rule 10E-14.03(7) eliminated the district wide matching concept.
An October 1, 1982, amendment to the contract between the parties required the board to furnish appellant with copies of any relevant DHRS rule changes. The record does not establish whether appellee furnished copies of the rule changes at issue here to appellant. Appellant acknowledged that it was aware of new Chapter 10E-14 and modified its budget requests to DHRS to comply with that chapter, but maintained that the new rules did not apply to the preexisting contract.
DHRS in 1984 audited all subcontractors who had provided services to DHRS during fiscal year 1982-83 to determine whether reimbursements from the mental health boards to service providers were justified. In conducting the audit, DHRS applied Chapter 10E-4 to the first quarter of the fiscal year, from July 1,1982, to September 30, 1982, and new Chapter 10E-14 to the last three quarters of the fiscal year, beginning October 1, 1982. DHRS determined that appellant had incurred unallowable expenditures of $69,895, which were to be repaid to DHRS.
Appellant requested a section 120.57(1) hearing to contest the audit payback liability, alleging that, under Chapter 10E-4, it had no payback liability, and that DHRS improperly applied Chapter 10E-14 in a retroactive manner to the preexisting contract. Appellant further contended the DHRS improperly treated Medicaid funds as grant dollars rather than as fees for services. Following a hearing, the hearing officer entered an order recommending that appellant’s payback liability be reduced. The hearing officer found that Chapter 10E-14 was applicable to the last three quarters of the contract period, that DHRS properly treated Medicaid funds as grant dollars, and therefore could require appellant to provide a 25 percent local match in order to retain its Medicaid reimbursements, and that annual and sick leave benefits in excess of those provided under the State Career Service Plan were properly disallowed. DHRS adopted the hearing officer’s findings of fact and conclusions of law in total, and ordered appellant’s payback liability to be modified accordingly.
Appellant argues that application of Chapter 10E-14 to the preexisting contract violated the prohibition against legislative impairment of contracts and the plain language of the contract. DHRS argues that the parties agreed to incorporate future law changes under contract language providing that the service provider was to comply -with “all other State standards, ...” in addition to those specifically cited in the contract. The court in Century Village, Inc. v. Wellington, Etc., 361 So.2d 128, 131 (Fla.1978), in addition to determining that section 711.63(4), enacted subsequent to execution of the parties’ contract, was intended by the legislature to apply to existing contracts, found that the appellant had agreed by specific language contained in the contract to be bound by all future *719 amendments to Florida Statute Chapter 711. In this case, neither the amended statute nor rule explicitly provided for retroactive application. Whether or not the above quoted contract language should be construed as an express agreement by the parties to incorporate future law changes,[1] we conclude that application of Chapter 10E-14 to the last three quarters of the contract period was proper in the circumstances of this case in view of evidence showing that appellant (1) had knowledge of the impending October 1, 1982, amendments to Chapter 394 (which had been enacted in April 1982) when it entered into the contract on September 30, 1982; (2) relied upon the amended legislation and resulting rule changes in submitting budget requests to DHRS throughout the fiscal year; (3) clearly anticipated such potential changes under an amended contract provision requiring DHRS to provide copies of relevant rule changes; and (4) could have terminated the contract at will with 30 days’ notice to DHRS.
We find no error in DHRS’s interpretation of Medicaid funding as state grant dollars requiring a local match for reimbursement to the service providers. The contract between the parties comports with the agency’s position, stating that appellant would agree to “(p]articipate in the Title XIX Program [Medicaid] with the understanding that ... earnings under this program are not the resources of the Provider. Reimbursement of eligible Medicaid Services will be the property of the Department.” The agency’s construction of Chapter 394, as permitting characterization of Medicaid funds as state grant dollars, is a reasonable interpretation of the statutory language. See Harris Corp. v. Department of Revenue, 409 So.2d 91, 93 (Fla. 1st DCA 1982).
As to appellant’s third issue, the fringe benefits in excess of those provided under the State Career Service Plan were properly disallowed under Chapter 10E-14. Rule 10E-14.17(4)(f)3, Florida Administrative Code (1983), provides that “[c]ompen-sation for employees is allowable up to the máximums for comparable positions listed in the Florida Career Service Plan.” Rule 10E-14.17(4)(f)l defines compensation as including “salaries, wages, incentive awards, fringe benefits, pension plan costs and competitive area differentials.” Rule 10E-14.17(4)(f)5.b provides that “[f]ringe benefits ... are allowable provided such benefits are granted in accordance with comparable coverage authorized for State employees in the State Career Service benefit package for career service employees.” Under Rule 10E-14.17(4)(f)5.1, fringe benefits such as annual and sick leave are allowable expenses. Only those expenses for fringe benefits that are in excess of those provided to state career service employees are disallowed. Although the hearing officer may have erred in characterizing appellant’s executive director as having found the union contract leave benefits to be “generous,” and in stating that finding as a basis for disallowing the excess leave expenses, the excess leave expenses were properly disallowed under the rules.
The order is therefore affirmed.
SMITH, C.J., and BOOTH, J., concur.

. The parties do not clearly articulate the potential question of whether such language, given that interpretation, might create an illusory contract problem by subjecting appellant to appel-lee’s unilateral power to alter the parties’ rights by promulgating rule changes not then reasonably anticipated.